```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MAYRA CRUZ, et al.,                 :

                Plaintiffs,         :   99 Civ. 10861 (JSR)(HBP)

    -against-                       :   OPINION
                                        AND ORDER
OLYMPIA TRAILS BUS COMPANY,         :

                Defendant.          :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

This is a diversity action in which Mayra Cruz and fourteen other passengers sought to recover damages for personal injuries they sustained in a bus accident. The personal injury claims of all the passengers have been settled. The matter is currently before me on remand to resolve a dispute concerning how the contingent fee resulting from Cruz's settlement should be divided between the law firm which commenced the action on behalf of Mayra Cruz -- Budin, Reisman, Kupferberg & Bernstein ("Budin, Reisman") -- and the law firm that subsequently took over the representation of Cruz and obtained a settlement in the amount of $475,000 -- the Law Offices of Rosemarie Arnold ("the Arnold Firm").

Budin, Reisman and the Arnold Firm consented to my exercising plenary jurisdiction over this fee dispute pursuant to

28 U.S.C. § 636(c) (Docket Item No. 16). The Court has subject matter jurisdiction over the dispute pursuant to the doctrine of supplemental jurisdiction. See Alderman v. Pan Am World Airways, 169 F.3d 99, 101-02 (2d Cir. 1999); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 449 (2d Cir. 1997); see also Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) ("We have consistently held that '[w]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees.'"), quoting In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003).

II. Facts

      A. Facts Underlying the Personal
         Injury Claim and the Fee Dispute

Based on hearings I held on August 13 and September 4, 2002, I make the following findings of fact.

On August 14, 1999, Mayra Cruz was a passenger on a bus that was involved in an accident on the New Jersey Turnpike, in Ridgefield Park, New Jersey. Cruz suffered multiple injuries in the accident, was hospitalized for six days and underwent surgery to repair her tibia.

While Cruz was hospitalized, an investigator from Budin, Reisman met with her. Cruz retained Budin, Reisman as her

attorneys on August 18, 1999. Budin, Reisman was also retained by the fourteen other plaintiffs in this matter. On or about September 20, 1999, Budin, Reisman commenced the underlying suit in Supreme Court, Bronx County; an amended complaint was filed on September 29, 1999. Defendants removed the matter to this Court on October 28, 1999.

By letter dated November 29, 1999, plaintiff terminated Budin, Reisman's representation and hired the Arnold Firm. In June 2000, the Arnold Firm settled plaintiff's case for $475,000 and received a contingency fee of $157,855.12. However, prior to the closing of this case, Budin, Reisman contacted Judge Rakoff and claimed that it was entitled to a portion of that contingency fee for work that it performed on the case prior to its termination.

B. Procedural History

On February 11, 2003, I issued an Amended Opinion and Order ruling that (1) New York law applies to Budin, Reisman's claim, (2) Budin, Reisman was not terminated for cause and (3) Budin, Reisman was entitled to fees on a quantum meruit basis in the amount of $16,500 for the sixty hours of work it performed on plaintiff's case (Docket Item No. 26). I arrived at this figure by multiplying sixty hours by $275, which I concluded was a reasonable hourly rate.

On October 23, 2003 the Court of Appeals vacated my Amended Opinion and Order and remanded the matter for further proceedings. Budin, Reisman, Kupferberg & Bernstein, LLP v. Law Office of Rosemarie Arnold, 79 Fed. Appx. 460 (2d Cir. 2003). The Court of Appeals agreed with my conclusion that New York law applied to this dispute but found that I had applied New York law erroneously. Specifically, the Court of Appeals stated:

> The law pertaining to fee disputes between attorneys when a discharge is not for cause is . . . clear. The Court of Appeals announced in Cohen v. Grainger, Tesoriero & Bell, 81 N.Y.2d 655, 602 N.Y.S.2d 788, 622 N.E.2d 288, 290 (1993), that the "discharged attorney may elect to receive compensation immediately [upon discharge] based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case. That right can only be limited by waiver or operation of law." In Cohen, the discharged attorney told the new attorney that he would seek his fee "at an appropriate time." Id. at 290. Although the new attorney argued that it would be "unconscionable" and against the spirit of a "contingency" fee to allow discharged attorneys to take a contingent fee after they know the outcome of the litigation, the New York Court of Appeals held that when attorneys agree to put off getting a quantum meruit recovery up front, a contingent fee basis should be presumed, with the discharged attorney receiving a "prorated share." Id. at 290-91. Although the New York Court of Appeals has held that "[w]here [a] discharge is without cause, the attorney is limited to recovering in quantum meruit the reasonable value of the services rendered," Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 44, 556 N.Y.S.2d 239, 555 N.E.2d 611 (1990), that case applies to disputes between lawyers and their clients, whereas Cohen is the proper authority to guide decisions in disputes between lawyers or sets of lawyers.
>
> The district court erred in applying the quantum meruit basis of recovery. Accordingly, we vacate the

>district court's judgment so that it may apply the
>relevant law as set forth in Cohen.

79 Fed. Appx. at 461.

Thus, in light of the Court of Appeals' decision, my task is to determine the proportionate shares of the work performed by Budin, Reisman and the Arnold Firm and allocate the $157,855.12 contingency according to those shares.

III. Analysis

    A.    Assessing Budin, Reisman's Proportionate Share

In determining the contingent fee award for a former attorney, courts base the award "on his or her proportionate share of the work performed on the whole case." Budin, Reisman Kupferberg & Bernstein, LLP v. Law Offices of Rosemary Arnold, supra, 79 Fed. Appx. at 461; see also Jones v. Birnie Bus Serv. Inc., 15 A.D.3d 951, 952, 789 N.Y.S.2d 789, 790 (4th Dep't 2005) (in allocating a contingent fee between successive counsel, courts must "determine 'the relative contributions of the lawyers'"); Smerda v. City of New York, 7 A.D.3d 511, 512, 776 N.Y.S.2d 86, 87 (2d Dep't 2004) ("[B]ecause the fee dispute is between attorneys, [the former attorney] had the option, as he seeks here, of receiving a contingent percentage fee based upon the proportionate share of the work he performed on the whole

5

case."); Byrne v. Leblond, 5 Misc. 3d 877, 881, 786 N.Y.S.2d 722, 755 (Sup. Ct. Kings Co. 2004) (same).

In assessing an attorney's proportionate share, courts consider the following factors: "the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." Foppiano v. City of New York, 00 Civ. 7968 (FM), 2002 WL 31202716 at *4 (S.D.N.Y. Sept. 25, 2002), quoting Buchta v. Union Endicott Cent. Sch. Dist., 296 A.D.2d 688, 689-90, 745 N.Y.S.2d 143, 145 (3d Dep't 2002); see also Louima v. City of New York, 98 CV 5083 (SJ), 2004 WL 2359943 at *81 (E.D.N.Y. Oct. 18, 2004) (identifying the relevant factors as "'(1) time; (2) standing of the lawyer at the bar; (3) amount involved; (4) benefit to the client and (5) skill demanded.'"); Lai Ling Cheng v. Modansky Leasing Co., Inc., 73 N.Y.2d 454, 458, 539 N.E.2d 570, 572, 541 N.Y.S.2d 742, 744 (courts consider factors such as "the amount of time spent by each lawyer on the case, the work performed and the amount of recovery"). Accordingly, I must weigh these factors to determine Budin, Reisman's proportionate share.

B. Balancing
   <u>of the Factors</u>

In my Amended Opinion and Order, I concluded that the "work Budin, Reisman did for plaintiff Mayra Cruz (exclusive of the work it was already doing for the other plaintiffs) would have taken a maximum of sixty (60) hours." Neither side has offered any additional evidence to impugn this finding. In connection with the fee dispute hearing, the Arnold Firm submitted an itemized time record, showing that it spent approximately 236 hours in connection with this proceeding[1] (The Arnold Firm's Statement of Material Facts at pp. 5-11, attached to Letter of Rosemarie Arnold, Esq., dated April 26, 2001, sworn to by Affidavit of Rosemarie Arnold, Esq. ("Arnold Aff."), dated June 7, 2001). Thus, Budin, Reisman contributed no more than 20% of the total hours the two firms spent in connection with the underlying proceeding.

However, the proportionate share of hours spent does not conclude the analysis. The other factors I must consider

---

[1] The Arnold Firm attempted to submit as evidence a subsequent record of the hours worked in connection with this proceeding, this record totaling approximately 228 hours (<u>See</u> Affidavit of Services of Mayra Cruz, attached as Ex. C to the Supplemental Brief of the Arnold Firm, enclosed with a Letter from Rosemarie Arnold, Esq., dated January 21, 2004). However, this document is not in admissible form, and thus, cannot be considered as evidence. This document does not constitute an affidavit; it is not sworn to nor is it attached to a document that is sworn to.

include: "the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." Foppiano v. City of New York, supra, 2002 WL 31202716 at *4. Since both of the law firms and attorneys involved have experience and, presumably, knowledge in the personal injury area, (Tr.[2] 82, 98), it is only necessary for me to analyze the specific work each firm performed in the case, the respective difficulty involved with respect to this work and the significance of this work in bringing about plaintiff's settlement.

Budin, Reisman met with plaintiff on only two occasions. The first time, an investigator, acting on behalf of Budin, Reisman, met with plaintiff for approximately twenty minutes while she was in the hospital (Tr. 42-43, 52, 133-34). The second time, plaintiff came to Budin, Reisman's office for a meeting that lasted approximately thirty minutes (Tr. 44, 52). Budin, Reisman also sent Cruz two letters: the first letter, dated August 24, 1999, advised Cruz of ways to protect her interests in the litigation, and the second letter, dated September 2, 1999, requested that Cruz sign and return certain forms (Tr. 103-04, 106, 138). Adam Bernstein, the Budin, Reisman

---

[2]"Tr." refers to the transcript of the Fee Dispute Hearing, dated August 13, 2002 and September 4, 2002.

attorney assigned to the matter, (Tr. 101), prepared a fifteen page complaint on behalf of all fifteen plaintiffs (Tr. 157). He testified that it took him less than one hour to prepare the complaint (Tr. 157).[3]

Budin, Reisman also performed work that Bernstein described as "busy work," including putting the liability and no-fault carriers on notice, contacting doctors to request medical records and Cruz's employer for verification of her wages (Tr. 100, 139-41). Budin, Reisman filed a no-fault claim on behalf of plaintiff, (Tr. 103-06), and sent out "form" letters requesting medical records, bills and other information from various entities (Tr. 139-44). Budin, Reisman arranged for plaintiff to meet with a doctor in New York City, although Cruz ultimately opted to remain with her doctors in New Jersey (Tr. 102-03, 160-63). Budin, Reisman also filed a jury demand with this Court (Docket Item No. 4; Tr. 109).

Bernstein testified that he spoke with plaintiff on the telephone approximately six to eight times over a period of several months (Tr. 101-02). Plaintiff disputes this, and testified that she called Budin, Reisman on approximately eight

---

[3]Budin, Reisman filed an Original Complaint and an Amended Complaint. It is not clear from the transcript whether it was the Original Complaint or the Amended Complaint that took Bernstein less than one hour to prepare.

9

occasions but her telephone calls were returned only once (Tr. 46-47).

Bernstein also had an unspecified number of telephone conversations with both defense counsel and representatives of defendant's insurers regarding Cruz's injuries (Tr. 109, 111, 114-15, 118-19). Bernstein testified that defense counsel conceded liability but never made any settlement offer (Tr. 119-20, 127, 157).

On December 2, 1999, Budin, Reisman appeared on behalf of all plaintiffs at an initial pre-trial conference before Judge Rakoff where a Civil Case Management Plan scheduling order was entered (Tr. 109-10; Docket Item No. 5). Later that afternoon, Budin, Reisman received a letter from plaintiff dated November 29, 1999, notifying the firm that it had been terminated as counsel for plaintiff (Tr. 110). Budin, Reisman forwarded a copy of Judge Rakoff's scheduling order to plaintiff by letter dated December 10, 1999 (Budin Ex. 6; Tr. 110). However, it was not until March 1, 2000 that the Arnold Firm obtained Cruz's file from Budin, Reisman (Tr. 24, 112-13; Arnold Aff. p. 6).

Budin, Reisman never conducted any discovery on behalf of Cruz (Tr. 22-23, 114, 120). Rather, the Arnold Firm responded to interrogatories and document demands, prepared for and defended Cruz's deposition, reviewed Cruz's deposition transcript, scheduled independent medical examinations, obtained and reviewed

Cruz's medical records, met with physicians to fully understand plaintiff's injuries and the source of her pain, obtained and reviewed Dr. Feldman's report on Cruz's injuries, as well as defendant's independent medical examination (Tr. 19-20, 27, 114, 120, 178; Arnold Aff. pp. 6-9). The Arnold Firm also engaged in trial preparation by creating trial exhibits, researching and drafting the proposed voir dire questionnaire and jury change, preparing opposition papers to defendant's motion to limit proof and researching and drafting the final pre-trial order (Arnold Aff. pp. 9-11).

Budin, Reisman was never provided with plaintiff's medical bills -- which totaled approximately $45,000 -- and, thus, was never able to obtain insurance payments (Tr. 106, 137, 166-68). The Arnold Firm filled out all of the necessary applications and ensured that plaintiff's medical bills were paid for by insurance; this process took approximately one year. (Tr. 18). Finally, it was the Arnold firm that engaged in settlement negotiations that resulted in the $475,000 settlement.

As noted, Budin, Reisman never conducted any discovery or trial preparation and never engaged in any significant settlement negotiations. It appears that the most substantive aspect of Budin, Reisman's work was filing the complaint on behalf of all plaintiffs -- which took less than an hour to prepare. The Arnold Firm's work, on the other hand, dealt with the more

11

demanding aspects of the litigation ranging from discovery to trial preparation to settlement negotiations.  I conclude that the Arnold Firm was competent and effective in negotiating an appropriate settlement.

As the foregoing discussion demonstrates, the evidence in this case clearly demonstrates that it was the work performed by the Arnold Firm that had the greater significance and the most impact on bringing about the $475,000 settlement.  It was the Arnold Firm's work that developed all the facts concerning plaintiff's injuries -- the heart of plaintiff's case.[4]  Budin, Reisman's work, in contrast, was largely routine and appears to have done little in bringing the case to resolution.[5]  Indeed, there is no evidence that Budin, Reisman even got a settlement offer from defendant.

Quantifying the respective contributions of Budin Reisman and the Arnold Firm is difficult.  There is no formula or bright-line rule that can be applied.  Precedent does, however,

---

[4]Although there are no certainties in any litigation, the nature of plaintiff's claim, i.e., a bus passenger injured in a crash of the bus, suggests that plaintiff's liability case was extremely strong.

[5]I do not mean to suggest in any way that the Arnold Firm is more skilled or more competent than Budin, Reisman or vice versa.  Both firms appear to have substantial skill and experience in the field of personal injury litigation.  However, it is incontrovertible that plaintiff terminated Budin, Reisman at the incipient stage of the litigation, before it did substantial work on plaintiff's claim.

12

suggest that Budin, Reisman's allocable share should be modest. For example, in Poulas v. James Lenox House, Inc., 11 A.D.3d 332, 783 N.Y.S.2d 28 (1st Dep't 2004), the Appellate Division of the Supreme Court affirmed an award of 1/30 of the contingency fee to outgoing counsel where outgoing counsel

> merely filed and served a three-page summons and complaint in the action and obtained some medical records during the 11 months it served as plaintiff's attorney. The incoming firm . . . by contrast, inter alia, responded to defendants' discovery requests, conducted approximately 10 depositions, retained experts on liability and damages, conducted voir dire, engaged in settlement negotiations and secured a highly favorable settlement for plaintiff, whose injuries, although serious, were difficult to establish clinically.

11 A.D.3d at 332-33, 783 N.Y.S.2d at 28-29.

The Appellate Division affirmed an award of 15% of the contingency fee to the outgoing counsel in Rouen v. Chrysler Credit Corp., 169 A.D.2d 656, 565 N.Y.S.2d 35 (1st Dep't 1991). In that case, however, outgoing counsel did far more work than Budin, Reisman did here. As stated by the court:

> Although the outgoing attorneys commenced the action by service of a summons and verified complaint, filed a bill of particulars, represented plaintiff at depositions, and accumulated various medical reports and hospital records, the record supports the determination of the IAS court that the incoming attorneys' contributions were far more significant. They conducted a complete investigation of the accident resulting in plaintiff's injuries, analyzed the various issues with respect to liability and damages, and engaged in extensive motion practice, before the matter went to trial. The incoming attorneys also spent approximately 13 days picking a jury and trying the case before a satisfactory settlement was reached.

13

169 A.D.2d 656-57, 565 N.Y.S.2d 35-36; accord Foppiano v. City of New York, supra, 2002 WL 31202716 at *2 (former attorney who prepared and responded to document demands and defended depositions was awarded 25% of the contingency fee); Pearl v. Metro Transp. Auth., 156 A.D.2d 281, 282-83, 548 N.Y.S.2d 669, 670-71 (1st Dep't 1989) (an award of 9 to 10 percent of the contingency fee insufficiently compensated the attorney who "commenced an action, drafted, served and reviewed various pleadings, conducted motion practice and discovery, appeared at depositions of plaintiff and defendant, and ultimately placed the case on the Trial Calendar."). Unlike these cases, Budin, Reisman did not participate in discovery or trial preparation on Cruz's behalf.

In Buchta v. Union-Endicott Centr. Sch. Dist., supra, 296 A.D.2d 688, 745 N.Y.S.2d 143, the plaintiff's three attorneys were awarded to 10, 25 and 65 percent of the contingency fee. In Buchta, the first attorney filed a notice of claim and conducted an initial investigation that included witness interviews and taking site photographs, the second attorney filed the complaint, completed discovery and filed a note of issue and the third attorney negotiated the settlement after plaintiff's condition had worsened. 296 A.D.2d 688, 688-90, 745 N.Y.S.2d 143, 144-45.

Considering (1) the relative number of hours that each firm spent on the case, (2) the routine nature of the work performed by Budin, Reisman, and (3) the far greater significance

14

of the work performed by the Arnold Firm, in light of the precedents discusses above, I conclude that Budin, Reisman is entitled to 15% of the contingency fee or $23,678.27. Budin, Reisman conducted no discovery or trial preparation, and did little more than draft a fairly simple complaint. Given the minimal nature of its work, I conclude that this sum adequately compensates the firm.

IV. Conclusion

Accordingly, I conclude that Budin, Reisman is entitled to a 15% prorated share of the contingency fee in the total amount of $23,678.27.

Dated: New York, New York
November 14, 2005

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Rosemarie Arnold, Esq.
The Law Office of Rosemarie Arnold
1386 Palisade Avenue
Fort Lee, New Jersey 07024

Harlan Budin, Esq.
Budin, Reisman, Kupferberg & Bernstein
112 Madison Avenue
New York, New York 10016